## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OHIO

| | | |
|---|---|---|
| R.Z., by his/her parent B.Z.; | : | CASE NO. |
| c/o SEBALY SHILLITO + DYER | : | |
| 9100 West Chester Towne Centre Dr. | : | |
| Suite 210 | : | |
| West Chester, OH 45069 | : | |
| | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| **CINCINNATI PUBLIC SCHOOLS;** | : | |
| **LAUREN MITCHELL, (Superintendent);** | : | |
| **CAROLYN JONES, (2021 President);** | : | |
| **RYAN MESSER, (2021 Vice President);** | : | |
| **MELANIE BATES, EVE BOLTON,** | : | |
| **PAMELA BOWERS, BEN LINDY, MIKE** | : | |
| **MOROSKI, (2021 Cincinnati Board Of** | : | |
| **Education Board Members)** | : | |
| **2651 Burnet Ave.** | : | |
| **Cincinnati, OH 45219;** | : | **COMPLAINT WITH JURY DEMAND** |
| | : | |
|   and | : | |
| | : | |
| **JOHN CHAMBERS (Principal)** | : | |
| **Walnut Hills High School** | : | |
| **3250 Victory Parkway** | : | |
| **Cincinnati, Ohio 45207;** | : | |
| | : | |
|   and | : | |
| | : | |
| **WALNUT HILLS HIGH SCHOOL** | : | |
| **3250 Victory Parkway** | : | |
| **Cincinnati, Ohio 45207** | : | |
| | : | |
|   Defendants. | : | |

Plaintiff R.Z.[1], by his/her parent B.Z. this Verified Complaint against Cincinnati Public Schools, Lauren Mitchell, (Superintendent), Carolyn Jones, Ryan Messer, Melanie Bates, Eve Bolton, Pamela Bowers, Ben Lindy, Mike Moroski, (School Board Members), John Chambers (Principal) and Walnut Hills High School (collectively "Defendants"), states as follows:

**INTRODUCTION**

1. This is an action brought in an effort to salvage the failure to educate at least one of the invisible or lost children with disabilities being neglected by Defendants during the COVID-19 pandemic pursuant to the Individuals with Disabilities Education Act "(IDEA"), 20 U.S.C. §1400 et seq., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), the Ohio Individual with Disabilities Education Improvement Act ("OIDEIA") and the Ohio Education of Children with Disabilities Law, Ohio Rev. Code Chapter 3323 ("Ohio Education Law") (collectively the "Education Laws").

2. Defendants have completely failed to provide a free appropriate public education for R.Z., a high school student with qualified disabilities, by ignoring the effects of remote, online learning on R.Z.'s Individualized Education Plan ("IEP"), refusing to reopen R.Z.'s high school, and making absolutely no efforts for compensatory services which should have, and could have, been provided to R.Z.

3. In 2006, B.Z. and his wife spent the latter half of the year and the ensuing next year trying desperately not to lose their child to Stage IV cancer. R.Z. was 13 months old. The parents lived at Children's Hospital for a year while R.Z. endured surgeries and other medical interventions, including eight rounds of chemotherapy. R.Z. endured three surgeries, all of which

---

[1] To preserve the anonymity of the minor child and parents, and the confidentiality of their personal information, in conformity with Rule 5.2(a) of the Federal Rules of Civil Procedure, the privacy provisions of the IDEA, 20 U.S.C § 1417(c), and the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g, the Complaint identifies the student and father as only R.Z. and B.Z., respectively.

2

had a domino effect on R.Z.'s prognosis. R.Z. endured two rounds of chemotherapy in ICU because R.Z.'s disease was so advanced and so difficult that there was no other alternative. Before ever entering the early educational process, R.Z. underwent five years being tested quarterly. R.Z.'s parents lived in fear of recurrence because in all likelihood, survival was very low.

4. Fortunately, R.Z. was lucky and received great individualized medical care. R.Z. not only survived this horrible childhood cancer, but also has flourished. Until the last year, R.Z. has been on track and doing quite well at school. But, R.Z.'s education has been challenging. Because the medical intervention was tailored to him, the long term effects are largely unknown. They include cancer-associated cognitive impairment, symptoms of which generally include attention and concentration difficulties, reduced processing speed and executive function, and compromised short term memory. R.Z. has also been diagnosed with ADHD which is treated with medication. Fortunately for R.Z., under the Education Laws, R.Z. is a qualified individual with a disability, and R.Z. has always had an IEP. With R.Z.'s IEP and inherent brightness, R.Z. tested well for placement in Walnut Hills High School, the Cincinnati Public Schools flagship. R.Z.'s grades were stable, work was good, and R.Z. is active in extra-curriculars, and growing into a very fine young person.

5. In 2020, however, Defendants enacted a stay-at-home mandate for its students, but did absolutely nothing to address the special needs accommodation programs, and children like R.Z. are being lost again. Other Ohio Schools immediately reviewed IEPs with parents when Governor Mike DeWine shut down public schools and some required an in-person exception to meet the IEP goals. Defendants did no such thing and, despite recently opening all other Cincinnati Public Schools, they continue a stay-at-home mandate for Walnut Hills. Upon information and belief, they hide behind the notion that vast majority of the high-end students of Walnut Hills

3

actually excel with 5-day digital only learning. Upon information and belief, remote-only learning is rife with opportunities for clever, high-end students to cheat in order to inflate, artificially, how well they are thriving in this environment.

6. R.Z., however, struggles every day with the workload; R.Z. battles ambivalence and a lack of connection that is having a material adverse effect on R.Z. Hopefully, the remedies sought through this lawsuit may avoid long term, permanent damage for R.Z.

## **PARTIES, VENUE, AND JURISDICTION**

7. Plaintiff is a High School Student attending Walnut Hills in Cincinnati; R.Z. resides with his/her parents who are Cincinnati residents and his/her father brings this action on R.Z.'s behalf.

8. Defendants Lauren Mitchell, (Superintendent), Carolyn Jones, Ryan Messer, Melanie Bates, Eve Bolton, Pamela Bowers, Ben Lindy, Mike Moroski (School Board Members), and John Chambers (Walnut Hills Principal) all reside and/or work in this judicial district. Of course, Cincinnati Public Schools is a Local Educational Agency under Ohio law providing public education services in this judicial district. At all relevant times hereto, such educational services were provided through locally-based Defendant Walnut Hills High School.

9. This Court has jurisdiction over the claims asserted as they involve federal questions and application of federal law.

10. Venue is appropriate in this district because all parties are located and/or work in this judicial district and this division.

## FACTUAL BACKGROUND

### Proceeding through an Administrative Process Should not be Required

11. Although the Education Laws encourage resolving claims such as these through an administrative process prior to Court intervention, Plaintiff should be able to proceed without first exhausting those procedures.

12. As set forth below, at this point in the pandemic and the school year, particularly when all other Cincinnati Public Schools have reopened, lengthy administrative procedures would not provide an adequate remedy for B.Z and R.Z. Moreover, requiring the prior exhaustion of administrative remedies would be futile.

13. Mandating B.Z. and R.Z. to proceed through administrative procedures would fail to address the implications of the remote-learning process and how it has – and continues to – effect R.Z.'s education. Nothing in those procedures would cure the deficiencies in currently being propounded by Defendants' leaving this child with an IEP behind.

14. The administrative processes would also be futile in this case. Requiring anything other than the ability to enforce R.Z.'s and B.Z.'s rights within the court would be futile because the uncertainty with the COVID-19 pandemic continues to cause an imminent threat to R.Z's right to an appropriate education under the Education Laws.

15. Defendants' substantive failures have been compounded by procedural ones: Defendants have not established a plan, let alone any sufficient procedures for determining *whether* a student is entitled to compensatory services as a result of that student's inability to receive programs and services during remote learning; *what* compensatory services each student will require to put her in the position he/she would otherwise be in but for the denial of a FAPE; and *how* such services will be implemented.

16. The current Ohio Department of Education ("OH DOE") administrative hearing process offers no solution to these pressing questions. It is ill-equipped and fundamentally unable to resolve what compensatory services are due in light of the Defendants' large-scale failures caused by the pandemic. The OH DOE's due process hearing system is by its very nature adversarial—but an adversarial process here is neither appropriate nor warranted. Moreover, the students in dire need of compensatory services during remote learning need a forum that offers *expedited* decisions. The formalities of the current impartial due process hearing process—petitions, motion practice, testimony, and evidence—serve to prolong the denial of critical educational services to students already deprived of them for months when the current school year could end. This complex legal process is prohibitively burdensome for many parents; therefore, relying on this system to administer claims for pandemic-related compensatory services is likely to leave students behind.

17. Students with disabilities who are not receiving a FAPE due to loss of services during remote learning need compensatory services as soon as possible to prevent further loss of education and regression as remote learning continues. Without a practicable, streamlined process to determine the compensatory services required, students with disabilities will need to file thousands of individual claims for compensatory education services in an already overwhelmed administrative process that is backlogged for months and difficult to navigate for concerned parents. This additional strain on the OH DOE administrative system will force even those students whose families are able to clear the initial hurdle of submitting a formal, legally adequate hearing request to wait many more months—or even years—before receiving the special education services they urgently need. Forcing these students to wait so long for these critical services exacerbates the harm they have already suffered.

18. While the pandemic may have made it harder to provide services, this does not discharge Defendants of their legal obligations to ensure those services are provided or to remedy the educational losses suffered by students with disabilities. Defendants have failed to meet those obligations and have demonstrated no mechanism or plan to rectify those failures.

**Statutory Requirements for Providing Education to Students with Disabilities**

19. The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." IDEA § 300.1(a), 20 U.S.C. § 1400(d)(1)(A).

20. Under the IDEA, a FAPE is defined as an educational program that is individualized to a specific student that meets that student's unique needs, provides access to the general curriculum as appropriate to the student's needs, meets the grade-level standards established by the state, and from which the student receives educational benefit. *See* IDEA § 300.1; 20 U.S.C. § 1401(9).

21. Defendants are also required to provide students with disabilities a FAPE under Section 504 of the Rehabilitation Act. *See* 34 C.F.R. § 104.33(a).

22. The COVID-19 pandemic has caused unprecedented disruption in the lives of Ohio students with disabilities and their families. As the pandemic forced school closures, federal and Ohio officials stressed the obligation to maintain the same level of schooling and educational opportunities for students with disabilities as for other students.

23. Defendants, however, failed to heed these admonitions, depriving students with disabilities of a legally sufficient education.

**School Closures and Guidance for Educators Relating to FAPE Obligations**

24. On March 12, 2020, the United States Department of Education ("US DOE") released guidance titled "Questions and Answers on Providing Services to Children with Disabilities During the Coronavirus Disease 2019 Outbreak."[2]

25. The US DOE guidance stated, "If an LEA [local educational agency] continues to provide educational opportunities to the general student population during a school closure, the school must ensure that students with disabilities also have equal access to the same opportunities, including the provision of FAPE. (34 C.F.R. §§ 104.4, 104.33 (Section 504) and 28 C.F.R. § 35.130 (Title II of the ADA))."[3]

26. The US DOE guidance further stated that "SEAs [state educational agencies], LEAs, and schools must ensure that, to the greatest extent possible, each student with a disability can be provided the special education and related services identified in the student's IEP developed under IDEA, or a plan developed under Section 504. (34 C.F.R. §§ 300.101 and 300.201 (IDEA), and 34 C.F.R. § 104.33 (Section 504)). And 28 C.F.R. § 35.130 (Title II of the ADA))."[4]

27. Regarding compensatory services, the US DOE stated, "If a child does not receive services during a closure, *a child's IEP team* (or appropriate personnel under Section 504) must make an individualized determination whether and to what extent compensatory services may be needed, consistent with the applicable requirements, including to make up for any skills that may have been lost."[5] Defendants have provided no such efforts for Plaintiff.

---

[2] *Questions and Answers on Providing Services to Children with Disabilities During the Coronavirus Disease 2019 Outbreak*, U.S. Dep't of Educ. (Mar. 12, 2020), https://sites.ed.gov/idea/files/qa-covid-19-03-12-2020.pdf. (last visited February 26, 2021)

[3] *Id.* at 2.

[4] *Id.*

[5] *Id.* (emphasis added).

8

28. On March 21, 2020, the US DOE Office for Civil Rights clarified that ensuring compliance with the Individuals with Disabilities Education Act (IDEA), Section 504 of the Rehabilitation Act (Section 504), and Title II of the Americans with Disabilities Act should not prevent any school from offering educational programs through distance instruction.

29. It reinforced that school districts must provide a FAPE consistent with the need to protect the health and safety of students with disabilities and those individuals providing education, specialized instruction, and related services to these students.

30. Congress has not waived any FAPE or Least Restrictive Environment requirements, nor has it extended any deadlines during the COVID crisis. The Ohio Department of Education has reiterated this point and cautioned that appropriate education under the OIDEIA must continue despite COVID issues and closures.

31. Both the federal and state guidance on remote learning and on providing a FAPE to students with disabilities contemplate the need for compensatory services due to education and services lost during remote learning.

32. Compensatory services constitute prospective equitable relief that requires a school district to fund education to remediate any earlier deprivations in the child's education. The degree or amount of compensatory services must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place.

33. Some Ohio LEAs have taken the guidance seriously, interacted with parents of students with an IEP, and tailored compensatory services during the mandated shut down, including bringing some at-risk students to school for in-person education. Defendants did not take such action and continue to come up far too short in this respect.

**Defendants Failed to Provide Legally Required Education to Plaintiff during the Pandemic, Contrary to Federal and State Guidance**

34. From the onset of remote learning necessitated by the pandemic, Defendants have failed to meet their obligations to R.Z. under federal and state education laws. At the most basic level, Defendants have failed to provide Plaintiff with the programs and services required by R.Z.'s IEP. In addition to identifying the program and type of class that a student with a disability requires to progress, an IEP may require that a student receive related services and other accommodations. Students who do not receive these programs and services can, and often do, regress. Specifically, R.Z's IEP requires additional time on tests, and other specific items, that were never provided or even attempted since the resort to remote learning.

35. Defendants' shortcomings, however, exceed even their failure to provide the programs and services in accordance with Plaintiff's IEP. Defendants have failed to provide Plaintiff with learning tools needed to access remote learning rendering remote learning an empty promise for Plaintiff. Although Plaintiff's parents are fortunate enough to have resources to facilitate remote learning, such as computer access, internet bandwidth, and the like, these are not enough to keep him fully engaged and learning. As a result, Plaintiff is nominally receiving remote instruction, but has obtained little to no educational benefit; and, R.Z. has not received the same kinds of program and services that R.Z. would have received during traditional in-person instruction that R.Z.'s IEP requires as necessary to receiving an appropriate education. Having endured this deficit for the better part of a year, Plaintiff now desperately needs compensatory services and will need such compensatory services in the future just to catch up.

36. As discussed herein, Defendants' failures have manifested in a variety of ways, all of which served to deny Plaintiff access to appropriate education and services during remote learning: (A) Defendants have failed to comply with the education laws by not providing IEP-

required services during remote learning; (B) Defendants have failed to provide specifics detailed in R.Z.'s IEP for remote learning; (C) Defendants have failed to provide instruction and resources necessary such as follow-up telephone calls, tutoring, or other efforts to ensure the success of remote learning; and (D) Defendants have failed to provide necessary in-person instruction.

### Defendants Failed to Provide Services Consistent with Plaintiff's IEP During Remote Learning

37. Plaintiff's IEP requires, at a minimum, the following items that Defendants have failed to provide during the remote learning process:

   a. additional 50% time on tests;

   b. individualized procedures to overcome difficulties communicating and engaging;

   c. frequent breaks to calm down and refocus;

   d. individual skill sessions with 504 coordinator; and

   e. in-person instruction when necessary.

38. Students with disabilities were denied in-person instruction when their disabilities made remote learning difficult, if not impossible, to access. This remains true and is heightened for Plaintiff when in-person learning resumed at every school in the LEA jurisdiction except Walnut Hills.

39. For example, Plaintiff is unable to sit in front of a screen for extended periods of time, has difficulty with communicating and engaging due to R.Z.'s disabilities, faces specific challenges during remote learning that Defendants have not accommodated.

40. R.Z. remained upon all digital remote learning from March, 2020 and continues to remain remote only. Not once during that time period did any teacher, member of R.Z.'s IEP team, nor any 504 Coordinators reach out individually to R.Z. to see whether they were providing R.Z. a FAPE in accordance with the plan requirements.

41. In January, 2021, R.Z.'s IEP came up for annual renewal. At that time, however, Defendants had just announced all high schools in the school district would return to in person learning on February 1, 2021, including Walnut Hills. A member of R.Z.'s IEP team contacted R.Z.'s mother, for the first time since the shutdown, inquiring whether the existing IEP should remain in place. In reliance on Defendants' statements about reopening, and because the IEP had worked well for in-person learning, R.Z.'s mother confirmed a renewal of the exact same IEP in late January. Shortly thereafter, however, Defendants succumbed to pressure from some parents and outspoken students and decided Walnut Hills, and only Walnut Hills, would remain digital only.

42. The debate before the School Board during online public hearings has been robust, and sometimes less than civil, discourse. Some parents have informed Walnut Hills personnel that certain student activists who oppose in-person learning have engaged in cyber-bullying of students who (themselves or through their parents) oppose all remote learning. During the public commentary at Board meetings, opportunities to speak are limited and many parents and students are denied the opportunity to voice their opinions. Upon information and belief, in what can only be described as a statistical anomaly, however, one vocal student activist who opposes reopening seems to have a regular platform.

43. Plaintiff does not deny that Defendants are generally afforded broad discretion to determine appropriate circumstances for deciding how educational services are provided. This discretion, however, affords them no defense upon Plaintiff's claims for two reasons. First, the rationale for keeping Walnut Hills remote-only is suspect. Defendants are aware, or should be aware of the rampant cheating that has been occurring at Walnut Hills as a result of this environment. And, while defendants claim the lack funds for necessary technology to broadcast

12

live teaching and other technology needs to allow some in-person learning, for unknown reasons and unlike many Ohio LEA's, Defendants did not apply for CARES Act funding which could have been used to facilitate such technologies. Second, the overall discretion to make decisions for the student body as whole does not apply to federal and state statutory obligations to provide a student with a disability a FAPE in accordance with an established IEP.

44. The lack of any in-person learning, interaction related thereto, and failure to provide special accommodations or even contact R.Z. personally has caused him/her to suffer, and R.Z. is not receiving the FAPE to which R.Z. is entitled.

**FIRST CLAIM FOR RELIEF**
**(Violation of The Individuals With Disabilities Act)**
**(20 U.S.C. § 1400)**

45. Plaintiff incorporates all previous averments as though fully set forth herein.

46. The IDEA requires that students be provided with a FAPE.

47. The IDEA further requires each SEA and LEA to ensure that each public agency establishes, maintains, and implements procedural safeguards that meet the requirements of the IDEA.

48. As part of providing a FAPE, the IDEA requires that the SEAs and local school districts provide evaluations and develop IEPs, with involvement of the parents, to ensure students receive a FAPE. These requirements explicitly require the US DOE, and by extension the OH DOE, to provide an adequate process through which students can file a complaint to challenge the denial of services in accordance with the students IEP.

49. Defendants have violated, and continue to violate, the IDEA by materially failing to implement Plaintiff's IEP fully during remote learning and school closures, thereby denying R.Z. a FAPE.

50. As the result of Defendants' practices during remote learning and school closures, Plaintiff has lost, and will continue to lose, access to educational services that R.Z. needs due to his/her disabilities.

51. Through their actions and omissions, Defendants failed to ensure that Plaintiff receives the education to which R.Z. is entitled under the IDEA.

52. As a result of these denials of a FAPE during remote learning and school closures, Plaintiff is entitled to, compensatory services.

53. The OH DOE's administrative hearing process is not adequate to address the harms alleged in this complaint; and, therefore, Plaintiff seeks an alternative hearing process and plan to address remote learning compensatory services claims.

54. Any further delay in receipt of these compensatory services will cause further harm to Plaintiff.

## SECOND CLAIM FOR RELIEF
### (Violation of Section 504 of The Rehabilitation Act)
### (29 U.S.C. § 794)

55. Plaintiff incorporates all previous averments as though fully set forth herein.

56. The Rehabilitation Act requires that agencies that receive federal funding prevent individuals with disabilities from being excluded from participation in, being denied the benefits of, or being subjected to discrimination under, any program or activity receiving Federal financial assistance or under any program or activity. *See* Rehabilitation Act § 794(a).

57. The Rehabilitation Act requires school districts to provide a FAPE to students with disabilities. 34 C.F.R. § 104.33(a).

58. Plaintiff is a qualified individual under Section 504 in that R.Z.'s disabilities are a physical or mental impairment that substantially limits one or more major life activities, including learning.

59. Defendants receive federal financial assistance for the relevant programs.

60. During the period of school closures and remote learning due to COVID-19, and as it continues today, Defendants violated the civil rights of Plaintiff by failing to provide him the support and services R.Z. requires to learn because of R.Z.'s disabilities.

61. Plaintiff is suffering ongoing harm by Defendants' violations.

62. Through their actions and omissions, Defendants failed to ensure that Plaintiff receives the education, services, and accommodations to which R.Z. is entitled under Section 504.

63. In general, students with disabilities, such as Plaintiff, have been disparately impacted as compared to students without disabilities due to the challenges in accessing and receiving remote learning due to R.Z.'s disability and IEP-mandated services.

64. Defendants know that students with disabilities in their LEA jurisdiction are entitled to equal access to the educational program and services. Despite this, Defendants intentionally, or with deliberate indifference, failed to ensure that Plaintiff received a FAPE and were free from discrimination on the bases of R.Z.'s disabilities during remote learning.

65. By failing to provide services during remote learning consistent with the Plaintiff's IEP, Defendants denied the Plaintiff a FAPE.

66. Under Section 504, Plaintiff is entitled to declaratory, injunctive, and compensatory relief to address Defendants' failures to provide a FAPE to students with disabilities during remote learning.

67. The OH DOE's administrative due process system under Section 504 is inadequate to address Plaintiff's harm. Remote learning has presented unique challenges for students with disabilities in the OH DOE school system. Plaintiff's need for compensatory services and the Defendants' failure to comply with R.Z.'s IEP during remote learning will require inquiries and considerations specific to remote learning that are better addressed through a specially designed expedited process independent of the OH DOE's impartial due process hearing process.

68. By failing to provide appropriate remote instruction and services that meet Plaintiff's needs, including, but not limited to, in-person instruction, and by failing to create a system by which Plaintiff can timely receive the compensatory services required as a result of remote learning and school closures, Defendants have violated Section 504 of the Rehabilitation Act to the detriment of Plaintiff.

## THIRD CLAIM FOR RELIEF
### (Violation of Ohio Education Law, O.R.C. Chapter 3323)

69. Plaintiff incorporates all previous averments as though fully set forth herein.

70. Plaintiff is a qualified "child with a disability" under O.R.C. § 3323.01(A) in that R.Z.'s disabilities are a physical or mental impairment that substantially limits one or more major life activities, including learning. R.Z. has an IEP pursuant to § 3323.011. During the period of school closures and remote learning due to COVID-19, and as it continues today, Defendants violated R.Z.'s rights under the OIDEIA by failing to provide R.Z. the support and services required to learn because of R.Z.'s disabilities.

71. Through their actions and omissions, Defendants failed to ensure that Plaintiff receives the education, services, and accommodations to which R.Z. is entitled under the ODEIA.

72. In general, students with disabilities, such as Plaintiff, has been disparately impacted as compared to students without disabilities due to the challenges in accessing and receiving remote learning due to their disability and IEP-mandated services.

73. Defendants know that students with disabilities in their LEA jurisdiction are entitled to equal access to the educational program and services. Despite this, Defendants intentionally or with deliberate indifference failed to ensure that Plaintiff received an appropriate education under the ODEIA and were free from discrimination on the bases of R.Z.'s disabilities during remote learning.

74. By failing to provide services during remote learning consistent with the Plaintiff's IEP, Defendants denied the Plaintiff an appropriate education under the ODEIA.

75. The procedures to assure guaranteed procedural safeguards in decisions promulgated under O.R.C. § 3323.05 will require inquiries and considerations specific to remote learning that are better addressed through a specially designed expedited process independent of the procedural safeguards.

76. Plaintiff is suffering ongoing harm by Defendants' violations.

### FOURTH CLAIM FOR RELIEF
**Violation of Civil Action for Deprivation of Rights' under 42 U.S.C. § 1983**

77. Plaintiff incorporates every allegation above as though fully set forth herein.

78. Plaintiff's rights under the IDEA are enforceable under 42 U.S.C. § 1983, and the Defendants have acted under color of state law.

79. Defendants have acted with deliberate indifference in engaging in policies, practices, and customs that have led to these violations, despite clear notice that their policies, practices, and customs have cause the violations, and without correcting the policies, practices, and customs.

80. These policies, practices, and customs constitute the *de facto* policy of the Defendants.

81. Defendants have deprived Plaintiff of rights under the IDEA, Rehabilitation Act, and Education Laws and the regulations promulgated thereunder, and thus have deprived Plaintiff of rights secured by federal law in violation of 42 U.S.C. § 1983.

82. Defendants have adopted a custom and practice of denying Plaintiff services in accordance with R.Z.'s IEP during the remote learning period.

83. The normal recourse for these violations is through the impartial due process hearing process, but that process is functionally unavailable to Plaintiff given that Defendants' customs and practices have created novel circumstances that are best addressed outside the normal, and already overburdened, impartial due hearing process. For this reason, Defendants' customs and practices have closed the door for Plaintiff to obtain relief to redress the denial of the FAPE during remote learning and left them unable to seek redress for this denial through an award of compensatory services.

84. As a result of these violations, Plaintiff is entitled to injunctive and declaratory relief, and to costs and attorney's fees.

WHEREFORE, Plaintiffs respectfully request that the Court issue the following relief:

    A. Declare that Defendants' conduct has violated the Education Laws and 42 U.S.C. § 1983;

    B. Enter an injunction against Defendants that orders them to cease engaging in the foregoing violations of law;

    C. Award Plaintiff the fees (including attorney's fees), costs, and expenses incurred in connection with enforcing R.Z.'s rights under the IDEA and Rehabilitation Act,

      including but not limited to the fees (including attorney's fees), costs, and expenses incurred in this action; and

D.    Compensatory services, damages, and any other relief this Court seems just and equitable.

      Respectfully submitted,

/s/ Daniel J. Donnellon
Daniel J. Donnellon    (0036726)
Kaitlyn C. Meeks    (0098949)
SEBALY SHILLITO + DYER
A Legal Professional Association
9100 West Chester Towne Centre Drive
Suite 210
West Chester, Ohio 45069
937-222-2500 Telephone
937-222-6554 Facsimile

Attorneys for Plaintiff

## **JURY DEMAND**

Plaintiff demands trial by jury on all claims asserted for which such rights are afforded.

/s/ Daniel J. Donnellon<br>
Daniel J. Donnellon     (0036726)

3631172.4