**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

R.Z., by his/her parent B.Z.,                           Case No. 1:21-cv-140

            Plaintiff,                           McFarland, J.
                                                        Bowman, M.J.

    v.

CINCINNATI PUBLIC SCHOOLS, et al.,

            Defendants.

**REPORT AND RECOMMENDATION**

On March 1, 2021, Plaintiff R.Z., by his father B.Z.,[1] filed a complaint against multiple individual and institutional Defendants (hereinafter "the School Defendants"). (Doc. 1 at ¶7). Although the matter was briefly stayed for a 30-day period on March 19, 2020 in order for the parties to pursue extrajudicial resolution, litigation resumed after those efforts proved unsuccessful.

On April 22, 2021, the School Defendants moved to dismiss this case for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. (Doc. 27). Plaintiff filed a response in opposition to dismissal, to which Defendants filed a reply. (Docs. 30, 31). On July 14, 2021 at 10:00 a.m., the parties presented oral argument on the pending motion. The undersigned, being fully advised, now recommends that Defendants' motion to dismiss be granted.

---

[1] For convenience, the Court uses a male pronoun to refer to R.Z. in this Report and Recommendation. (*See*, *generally*, Doc. 1 at ¶¶4, 35, 60 (use of male pronoun in complaint)).

## I. Background

R.Z., presently a high school student at Walnut Hills High School ("Walnut Hills"), was treated for cancer when he was 13 months old. (Doc. 1 at ¶3). Side effects of the treatment are "largely unknown" but include "cancer-associated cognitive impairment, symptoms of which generally include attention and concentration difficulties, reduced processing speed and executive function, and compromised short term memory." (*Id*. at ¶4). R.Z. also has ADHD. (*Id*.) As a result of these disabilities, Plaintiff has an Individualized Education Plan ("IEP") under the Individuals with Disabilities Education Act ("IDEA"). The IDEA generally requires states to identify students with disabilities and to provide a free appropriate public education ("FAPE") for such students. *See* 20 U.S.C. § 1414(a). Local schools are typically tasked with developing and implementing an IEP that has been developed for a student with a disability. *See* 20 U.S.C. §1414(d); *see also* 34 C.F.R. § 300.323(c)(2); 34 C.F.R. § 300.17.

Plaintiff alleges that the School Defendants failed to provide R.Z. with a FAPE during a time period in which Walnut Hills was operating as 100% remote learning as a result of the Covid-19 pandemic.[2] Plaintiff further alleges that Defendants' failure to provide R.Z. with an adequate FAPE results in violations not only of the IDEA, but also violations of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), the Ohio Individual with Disabilities Education Improvement Act ("OIDEIA") and the

---

[2]At the time the complaint was filed, Walnut Hills was still operating at 100% remote learning. However, according to public records (and the parties herein), Walnut Hills subsequently resumed in-person learning for all interested students.

Ohio Education of Children with Disabilities Law, Ohio Rev. Code Chapter 3323 ("Ohio Education Law") (collectively the "Education Laws"), and 42 U.S.C. § 1983. (Doc. 1 at ¶1). The complaint acknowledges that the IDEA contains a statutory exhaustion requirement but asserts that the requirement is excused because the remedy available is inadequate and/or exhaustion would be futile. (Doc. 1 at ¶¶ 11-18).

## II. The Standard of Review Under Rules 12(b)(1) and Rule 12(b)(6)

Defendants' motion to dismiss alternatively seeks dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction, and/or under Rule 12(b)(6), for failure to state a claim. Under either provision of Rule 12, the basis of the motion is Plaintiff's acknowledged failure to exhaust his administrative remedies under the IDEA prior to proceeding in this Court.

Defendants plead their motion alternatively because the Sixth Circuit has not definitively determined whether the IDEA's exhaustion requirement is a jurisdictional prerequisite. *See L.G. by and through G.G. v. Board of Education of Fayette County, Kentucky*, 775 Fed. Appx. 227, 231 n.3 (6th Cir. 2019); *Gibson v. Forest Hills Local School District Bd. of Educ.*, 655 Fed. Appx. 423, 431 (6th Cir. 2016); *Sharbowski v. Utica Community Schools*, 2019 WL 587274, at *7 n.2 (E.D. Mich., Feb. 13, 2019) (noting that the Sixth Circuit "has declined to take an affirmative position" on a circuit split concerning whether a failure to exhaust under the IDEA is jurisdictional). However, in cases like this one, where the parties do not dispute exhaustion-related factual findings, "the distinction makes no difference." *Gibson*, 635 Fed. Appx. at 431; *but see generally*, *Ohio Nat'l Life*

*Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990) (explaining that "the primary difference between Rule 12(b)(1) and 12(b)(6) motions is not in the procedures used but in the effect the ruling will have upon the parties.").

Courts typically limit review of a motion to dismiss filed under Rule 12(b)(6) to an examination of the pleadings, though they may review exhibits attached to the complaint and public records, *See Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir.2001) (citing *Nieman v. NLO, Inc.,* 108 F.3d 1546 (6th Cir.1997)).  Under Rule 12(b)(6), a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).  The Court must accept all well-pleaded factual allegations as true but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). While a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557.

4

## II.  Analysis

### A.  The Exhaustion Requirement Applies to the Claims Presented

Plaintiff concedes that the IDEA requires would-be plaintiffs to exhaust their administrative remedies prior to filing any suit that seeks relief under the IDEA or that seeks IDEA-related relief under "the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities." *See* 20 U.S.C.§ 1415(l) (requiring administrative exhaustion if the relief sought "is also available" under the IDEA).  Despite that acknowledgment, Plaintiff suggests in opposition to the pending motion that his claims could be viewed as falling outside the scope of relief under the IDEA because Plaintiff is "not contesting the substance or propriety of an IEP," but instead is "challenging how Defendants' policies during the COVID19 pandemic… completely ignored the presumptively well-developed administrative plans in place…."  (Doc. 30 at 2).  He argues that this Court "is not asked to evaluate the needs versus the accommodations" he has been offered in his IEP, (Doc. 30 at 11), but only the school's policy of declining to offer "any in-person learning" and its "complete failure to examine whether a FAPE can be provided… while Walnut Hills High School… remained remote, online only."  (Doc. 30 at 2).

In support of his argument, Plaintiff cites to *Fry v. Napoleon Cmty. Schs.*, 788 F.3d 622, 626 (6th Cir. 2015), *vacated* at 137 S. Ct. 743 (2017).  But *Fry* does not aid Plaintiff here.  In *Fry*, the Supreme Court held the IDEA "requires exhaustion when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE,"

regardless of how artfully a plaintiff has pleaded his or her claims in order to avoid the IDEA's exhaustion requirement.  *Fry*, 137 S.Ct. at 755 (2017).  Unlike in *Fry*, Plaintiff here has not attempted to avoid the IDEA.  Rather, Plaintiff expressly asserts that "the gravamen of the Complaint" is the denial of free appropriate public education to R.Z. (Doc. 30 at 7).  Under *Fry* then, exhaustion clearly applies to all of Plaintiff's claims absent some exception to that requirement.

In *Perez v. Sturgis Public Schools*, ___ F.4th ___, 2021 WL 2621117 (6th Cir. June 25, 2021),[3] the Sixth Circuit recently applied *Fry* when it affirmed the dismissal of a case based upon the failure of a plaintiff to exhaust.  In so doing, the *Perez* majority emphasized the mandatory nature of IDEA exhaustion for any suit that "concerns" the denial of a FAPE:

> Some parents would rather not trudge through an administrative process before coming to court. But federal law requires parents to complete the IDEA's administrative process before bringing any suit under federal law that concerns the "denial of a free appropriate public education." This requirement includes even parents who forgo their IDEA claims and sue under another statute: Parents must first "exhaust[ ]" the IDEA's administrative procedures "to the same extent as would be required had the action been brought under [the IDEA]." 20 U.S.C. § 1415(*l*).

*Id*., 2021 WL 2621117, at *2.

Even if Plaintiff had not freely conceded that the "gravamen" or crux of his complaint concerns the denial of a FAPE under the IDEA, the allegations in his complaint compel that conclusion.  The complaint  alleges that Defendants have "failed to provide

---

[3]Because Perez was decided after briefing had closed on the Defendants' motion to dismiss, both parties were permitted leave to file supplemental briefs limited to a discussion of *Perez*. (Docs. 35, 36).

a free appropriate public education for R.Z.… by ignoring the effects of remote, online learning on R.Z.'s Individualized Education Plan ("IEP"), refusing to reopen R.Z.'s high school, and making absolutely no efforts for compensatory services…." (Doc. 1 at ¶2). One subheading of the complaint alleges "Defendants Failed to Provide Legally Required Education to Plaintiff during the Pandemic" while another proclaims that "Defendants Failed to Provide Services Consistent with Plaintiff's IEP During Remote Learning." (*Id.* at 10, 11). The complaint contains many details about Defendants' alleged failure to provide Plaintiff with a FAPE. (*Id.* at ¶ 44, alleging that "R.Z. is not receiving the FAPE to which R.Z. is entitled"; *id.* at ¶49, alleging that "Defendants have violated…the IDEA by materially failing to implement Plaintiff's IEP fully during remote learning and school closures, thereby denying R.Z. a FAPE."). Multiple allegations highlight those violations. (*See*, *e.g.*, *id.* at ¶¶34-40). In addition, Plaintiff alleges that Defendants failed to provide "follow-up telephone calls, tutoring, or other efforts to ensure the success of remote learning" and "necessary in-person instruction" when students at Walnut Hills were otherwise engaged in 100% remote learning. (*Id.* at ¶36).

In short, Plaintiff plainly challenges both the implementation of his existing IEP and the adequacy of his IEP during remote learning. The determination of whether or not a school has complied with a student's IEP is a fact-intensive inquiry that is best resolved through administrative procedures that elevate judicial economy and agency expertise. Likewise, determining a remedy when a school has failed to implement a student's IEP, including the remedy of compensatory education sought by R.Z., is an individualized and

fact-intensive inquiry that can and should be resolved at the administrative level. *See Woods v. Northport Public School*, 487 Fed. Appx. 968 (6th Cir. 2012) (affirming compensatory education award from administrative hearing); *see also generally, Perez v. Sturgis Pub. Schs*, *supra*, at *3 ("Given that everything in Perez's complaint points to a "focus on the adequacy of [his] education,'" plaintiff was required to exhaust under IDEA); *L.G. v. Bd. of Educ. of Fayette County*, 775 Fed. Appx. 227, 230-31 (6th Cir. 2019) (holding that the essence of a Rehabilitation claim concerning the plaintiff's "access" to education contested the adequacy of a special education program under the IDEA and therefore required exhaustion).

### B. No Exception to IDEA Exhaustion Exists for the Claims Presented

The complaint alleges that Plaintiff should be excused from exhaustion because "lengthy administrative procedures" would not provide an "adequate remedy" and "would be futile." (Doc. 1 at ¶ 12). In turn, Defendants' motion to dismiss focuses on the issue of whether Plaintiff can establish that he is entitled to a "futility" exception to the IDEA's usual exhaustion requirement.[4]

As explained below, the availability of any exceptions to the IDEA exhaustion requirement remains an open question in the Sixth Circuit following the recent publication of *Perez*. Assuming that the exception exists, however, the undersigned concludes that Plaintiff has failed to prove his claims fall within it. Last, although Plaintiff asks for the

---

[4]Technically, Plaintiff argues both the inadequacy and the futility of pursuing administrative exhaustion, but he draws no real distinction between the two. Instead, he argues that to require him to pursue an inadequate remedy would be an exercise in futility.

opportunity to amend his complaint should the undersigned recommend granting the Defendant's motion, I recommend denying that request.

### 1. Whether a Futility Exception Survives *Perez*

Until the recent publication of *Perez*, the Sixth Circuit repeatedly had held that a plaintiff proceeding under the IDEA may be excused from the exhaustion requirement if (and only if) he or she can show that exhaustion would be "futile or inadequate." *See, e.g., Crocker v. Tenn. Secondary Sch. Athletic Ass'n*, 873 F.2d 933, 935 (6th Cir. 1989); *see also, generally, F.H. ex rel. Hall v. Memphis City Sch.*, 764 F.3d 638, 644 (6th Cir. 2014)*; Covington v. Knox County School System*, 205 F.3d 912, 917 (6th Cir. 2000) (holding that IDEA exhaustion would be futile). Trial courts within this circuit had followed suit. However, in the Sixth Circuit's recent decision in *Perez*, the majority strongly suggested that existing precedent that recognizes exceptions to the IDEA's mandatory exhaustion requirement must be set aside in light of later Supreme Court precedent.

> Section 1415(*l*) does not come with a "futility" exception, and the Supreme Court has instructed us not to create exceptions to statutory exhaustion requirements. *See Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) (explaining that only "judge-made exhaustion doctrines . . . remain amenable to judge-made exceptions").

*Perez*, 2021 WL 2621117, at *4; *but see id.*, at **10-13 (Stranch, J., dissenting based in part on legislative history of IDEA and established case law that supports futility and inadequacy exceptions).

Despite the apparent holding of the *Perez* majority that the IDEA's exhaustion requirement brooks **no** exceptions, the majority opinion went on to reason that "[e]ven

9

assuming that a general futility exception exists for IDEA claims," it would not apply on the facts presented. *Id.* In light of *Perez*'s alternative analysis that the plaintiff there could not establish the futility exception, only time will resolve whether *Perez* definitively overruled the body of case law in this circuit that previously recognized exceptions to IDEA exhaustion. If that is what the *Perez* majority intended, then Plaintiff's case is subject to dismissal with no need to address the "futility" exception. Based upon the ambiguity created by the alternative analysis of *Perez*, however, and in an abundance of caution should *Perez* be read more narrowly by other courts, the undersigned considers the applicability of the exception that R.Z. asserts.

### 2. Plaintiff Cannot Show That Administrative Exhaustion is Futile

Assuming that some form of a futility exception to the IDEA's exhaustion requirement survives *Perez*, Plaintiff bears the burden of demonstrating that he is entitled to it. *See Honig v. Doe*, 484 U.S. 305, 307 (1988). Here, Plaintiff has not carried that burden. In conclusory fashion, Plaintiff predicts that "administrative procedures would fail to address the implications of the remote-learning process and how it has – and continues to – effect R.Z.'s education." (Doc. 1 at ¶13). The complaint further alleges "[t]he OH DOE's administrative hearing process is not adequate to address the harms alleged… and, therefore, Plaintiff seeks an alternative hearing process and plan to address remote learning compensatory services claims." (*Id*. at ¶53). Plaintiff similarly contends in opposing Defendants' motion that "[n]othing in the administrative procedures would have

been able to correct Walnut Hills' failure to address the IEPs or Section 504 Plan of any student with a disability, like R.Z." (Doc. 30 at 9).

Plaintiff's argument is unpersuasive. First, it bears noting that the complaint itself squarely alleges that the DOE guidance contemplates re-evaluation of IEPs and Section 504 Plans during periods of shut-down or remote learning, and that other schools re-evaluated IEPs and Section 504 plans in accordance with DOE guidance, and tailored compensatory services by "bringing some at-risk students to school for in-person education." (*Id*. at ¶33). In addition, procedural violations are to be first resolved at the administrative level. *Woods*, 487 Fed. Appx. at 976 (affirming district court, which agreed with impartial hearing officer that parents were denied meaningful participation in the IEP process). Second, even if this Court were to find that R.Z. seeks some type of unique remedy that is not available under the IDEA, Plaintiff still would not be entitled to a hall pass to proceed directly to federal court. In *Perez*, the Sixth Circuit confirmed that seeking a remedy that is unavailable under the IDEA does not impact the mandatory exhaustion analysis. "The focus of the analysis is not the kind of relief the plaintiff wants, but the kind of harm he wants relief from." *Id*., 2021 WL 2621117, at *3.

In his complaint, Plaintiff generally alleges that this federal court is better positioned to provide him with the remedy he seeks because the Ohio Department of Education ("OH DOE") process is "adversarial," because students "in dire need of compensatory services during remote learning need a forum that offers **expedited** decisions," and because the "complex" administrative process "is prohibitively

burdensome for many parents."  (Doc. 1 at ¶16, emphasis original).  Although a court must assume the veracity of factual allegations when evaluating a motion to dismiss, these allegations are not fact, but argument.  In contrast to Plaintiff's belief,  federal litigation is arguably even more "adversarial" in nature and is unlikely to offer more expedited resolution than could have been obtained through the administrative process. In any event, the parties' Rule 26(f) report suggests that this federal litigation in particular is likely to be both prolonged and burdensome.[5]

> Still, Plaintiff insists that he seeks a "streamlined process,"  alleging that otherwise
>
> students with disabilities will need to file thousands of individual claims for compensatory education services in an already overwhelmed administrative process that is backlogged for months and difficult to navigate for concerned parents.  This additional strain on the OH DOE administrative system will force even those students whose families are able to clear the initial hurdle of submitting a formal, legally adequate hearing request to wait many more months - or even years - before receiving the special education services they urgently need. Forcing these students to wait so long for these critical services exacerbates the harm they have already suffered.

(Doc: 1  at ¶17).

It is unnecessary for this court to delve too deeply into the factual underpinnings of the above allegation, because Plaintiff's legal premise - that potential delays in the administrative process warrant judicial intervention - is simply wrong.  Decades before the Sixth Circuit's recent decision in *Perez*, the appellate court emphasized the primacy of the IDEA's administrative exhaustion requirement:

---

[5]Briefing on the pending motion alone was not completed until the end of the 2020/2021 academic year.

> Federal courts - generalists with no expertise in the educational needs of handicapped students - are given the benefit of expert factfinding by a state agency devoted to this very purpose. Such a mechanism is necessary to give effect to a fundamental policy underlying the EHA: "that the needs of handicapped children are best accommodated by having the parents and the local education agency work together to formulate an individualized plan for each handicapped child's education." *Smith v. Robinson,* 468 U.S. at 1012, 104 S.Ct. at 3468. Were federal courts to set themselves up as the initial arbiters of handicapped children's educational needs before the administrative process is used, they would endanger not only the procedural but also the substantive purposes of the Act. And both states and the federal government have a recognized interest in providing enforcement of the Act that is not only just but efficient.

*Crocker*, 873 F.2d at 935 (dismissing based upon failure of plaintiffs to demonstrate applicability of "narrow" exceptions).

Concerns about potential delays in the administrative process in the midst of a global pandemic do not provide grounds for expanding the carefully defined "narrow" grounds that a plaintiff must demonstrate to prove the existence of an exception to the IDEA's exhaustion requirement. Here, Plaintiff complains that "Defendants have not established a plan [or]… procedures for determining *whether* a student is entitled to compensatory services as a result of that student's inability to receive programs and services during remote learning; *what* compensatory services each student will require to put her in the position he/she would otherwise be in but for the denial of a FAPE; and *how* such services will be implemented." (*Id.* at ¶ 15 (emphasis original)). He alleges that his right to a FAPE is "imminent[ly] threat[ened]." (*See* Doc. 1 at ¶14). But nearly every IDEA claim presents the same kind of "imminent threat," as the alleged denial (or threat of denial) of a FAPE is the very essence of an IDEA claim.

13

Congress has made clear that administrative exhaustion is required; this court may not set aside statutory requirements based upon a litigant's disagreement with an unambiguous law. *See also T.H. v. Cincinnati Pub. Sch. Dist. Bd. of Educ.*, Case No. 1:14-cv-516, 2014 WL 2931426 at *5 (S.D. Ohio June 27, 2014) (rejecting "irreparable harm" exception to exhaustion requirement). Based on the allegations of the complaint, there is no doubt that individual determinations are required. One student's IEP may need to be modified for remote learning during a pandemic, while another student's IEP may remain unchanged.

The complaint itself cites to federal and state DOE guidance that supports individualized determinations during the pandemic. (Doc. 1 at ¶¶7, 24-31).[6] Plaintiff's claims rest on his assertion that Defendants did not adhere to that guidance and did not meet to ensure that the existing IEP for R.Z. was adequate during the period of remote learning. As Defendants point out, "Plaintiff repeatedly and specifically points to the *individualized* needs and impact on R.Z." (Doc. 27 at 8, emphasis original). For example, Plaintiff alleges that he "is unable to sit in front of a screen for extended periods of time, has difficulty with communicating and engaging due to [his] disabilities, [and] faces

---

[6]The quoted guidance broadly states that authorities "must ensure that, *to the greatest extent possible*, each student with a disability can be provided the special education and related services identified in the student's' IEP…." (Doc. 1 at ¶ 26 (emphasis added); *see also id*. at ¶ 27, concerning guidance during a school "closure", "If a child does not receive services during a closure, a child's IEP team … must make an individualized determination whether and to what extent compensatory services may be needed….'"). Plaintiff concedes that the guidance "clarified that ensuring compliance with the …IDEA…should not prevent any school from offering educational programs through distance instruction. (*Id*. at ¶28).

specific challenges during remote learning that Defendants have not accommodated." (Doc. 1 at ¶ 39).

Plaintiff concedes as he must that "[c]ertainly, the specific compensatory damages suffered by R.Z. could be considered individualized." (Doc. 30 at 9). However, he argues that Walnut Hills never considered the impact of remote learning and the pandemic on any of its special needs students. With that argument, he attempts to squeeze into the exception judicially defined by *N.S. by & through J.S. v. Tenn Dept. of Educ.*, 2016 WL 3763264 at **9-10 (M.D. Tenn. July 14, 2016) ("*NS I*"). In *N.S*, the court determined that exhaustion would be futile where two students had alleged that the Knox Defendants had maintained a policy and practice of allowing and promoting the misuse and overuse of isolation and restraint techniques on students with disabilities. *See id.* (denying initial motions to dismiss for failure to administratively exhaust) and *N.S. by & through J.S. v. Tenn. Dept. of Educ*, 2017 WL 1347753, at *1 (M.D. Tenn. April 12, 2017) ("N.S. II", denying subsequent motion under Rule 12(b)(1)).

*N.S. I* is easily distinguished, assuming that its unpublished holding survives *Perez*. In *N.S. II*, the court summarized the rationale of *N.S. I*:

> [T]he plaintiffs have sufficiently alleged a systemic problem that reverberates throughout the Knox County school system…. The Prior Opinion further noted three primary factors that cut against requiring administrative exhaustion here: 1) it would be inefficient to address the issues in this action by looking at individual instances of isolation and restraint on a piecemeal basis, 2) requiring administrative exhaustion through the TDOE would overlook the allegations of misconduct by the TDOE itself, and 3) the purpose of the administrative exhaustion requirement - to allow local level review of IEPs by the parties most familiar

with a student's needs - is not relevant here, where the dispute is not about the IEPs of the individual plaintiffs, but about system-wide practices.

*N.S. II*, 2017 WL 1347753 at *2.

In contrast to *N.S.*, there is no dispute that Plaintiff's claims require individualized analysis. And simply adding allegations that other students with disabilities might also have been impacted does not suffice to forego the administrative exhaustion that the IDEA requires. Emphasizing the point, the same district judge rejected the expansion of *N.S. I* to any form of individualized claims in *T.D. v. Rutherford County Board of Education*, 2017 WL 77114 (M.D.Tenn. Jan. 9, 2017). The analysis set forth in that case applies with equal force to R.Z's claims.

> Allowing this action to proceed in federal court without exhausting this administrative process, simply because the Complaint alleges that the denial of services to [plaintiff] must be linked to a systemic policy or practice, would open the floodgates to allow any IDEA challenge to avoid exhaustion simply by invoking some version of this magic language. This would make a mockery of the administrative exhaustion requirement and allow for any student who wishes to challenge her receipt of services to simply point to whatever policy or practice appears to be related to the alleged inadequacy of her IEP, make the blanket conclusory allegation that other students are likewise impacted, and proceed straight to federal court. Such a result would be untenable.

*Id*. at *6.[7]

In addition to persuasively arguing that Plaintiff's claims require an individualized analysis that would benefit from the administrative process that forms the bedrock of the IDEA, Defendants argue that Plaintiff should not be allowed to skip ahead to federal court

---

[7]Even in *N.S. I*, the court was cognizant of the "danger that any IDEA claim could avoid exhaustion if it is accompanied by the vague allegation that there must have been something the local and state agencies could have done." *N.S. I*, 2016 WL 3763264, at *10.

16

based upon any exception to exhaustion because any urgency is of Plaintiff's own making. Specifically, Defendants maintain that Plaintiff's failure to alert the school and/or his IEP team of any concerns and delay in filing suit contributed to any injury. By the time Plaintiff first alerted Defendants to the issue by filing this lawsuit on March 1, 2021, R.Z. had been engaged in remote learning at Walnut Hills for nearly 12 months, spanning two academic years. During that time, Plaintiff admittedly did not avail himself of any available administrative procedures under the IDEA.

In response, Plaintiff protests that he and/or his parents simply were not aware of the deficiencies in his IEP as applied to remote learning because at the end of the first academic school year, 2019-2020, "any reduction in educational efficacy was not discernable" because "ostensibly… final semester grades during the closure were just repeated from the prior pre-closure semester." (Doc. 30 at 4). Notably, the complaint itself contains no allegations concerning grades, the type of harm suffered, or when it was discovered.[8] Also undermining Plaintiff's "reliance" argument is Plaintiff's allegation that Defendants addressed Plaintiff's IEP in January 2021 as part of an annual review, at which time Plaintiff's parent explicitly approved "the exact same IEP." (Doc. 1 at ¶41).

In defense of his approval of the existing IEP prior to filing suit, Plaintiff maintains that the approval was based upon the prior efficacy of his IEP combined with a mistaken

---

[8]The complaint alleges only "ongoing harm" to Plaintiff. (Doc. 1 at ¶¶ 61, 76). No specific allegations concerning the nature of that harm or the timing of discovery are included. Instead, the complaint merely alleges that Plaintiff "struggles every day with the workload," and "battles ambivalence and a lack of connection" in remote-learning. (*Id.* at ¶6).

belief at the time of IEP renewal that Walnut Hills was about to resume in-person learning. The complaint puts it this way:

> In January 2021, R.Z.'s IEP came up for annual renewal. At that time, however, Defendants had just announced all high schools in the school district would return to in person learning on February 1, 2021, including Walnut Hills. A member of R.Z.'s IEP team contacted R.Z.'s mother, for the first time since the shutdown, inquiring whether the existing IEP should remain in place. In reliance on Defendants' statements about reopening, and because the IEP had worked well for in-person learning, R.Z.'s mother confirmed a renewal of the exact same IEP in late January. Shortly thereafter, however, Defendants succumbed to pressure from some parents and outspoken students and decided Walnut Hills, and only Walnut Hills, would remain digital only.

*Id*. Based upon the complaint and published news reports, in-person learning did not actually resume until approximately 6 weeks after the originally anticipated February 1 date, sometime between March 31 and April 6.[9]

Plaintiff argues that the March 1 lawsuit was filed only after "Defendants reneged" on the February 1 in-person start date, implying that he would not have filed suit but for that 6-week delay.  (Doc. 30 at 4).  But that argument fails to fully address the fact that his parent(s) expressed satisfaction with the existing IEP in "late January" 2021, following many months of remote learning with that IEP in place.  At oral argument, Plaintiff's counsel further explained that Plaintiff considered going through the administrative process once it became clear that Walnut Hills would not reopen for in person learning on February 1, but decided to file this lawsuit because Plaintiff had "no faith" that the

---

[9]See, e.g., https://www.wlwt.com/article/walnut-hills-high-school-and-cps-returning-to-in-person-learning-5-days-a-week/35993738

School Defendants would abide by a ruling issued by an administrative judge after a due process hearing.[10]   However, this Court has no authority to create a new exception to exhaustion for litigants who fear that the administrative process will fail to produce the desired result  *See also, generally, T.H. v. Cincinnati Pub. Sch. Dist. Bd. of Educ.*, 2014 WL 2931426 at *8 (rejecting exception to exhaustion where plaintiffs sought urgent court intervention to provide additional summer services, but did not administratively exhaust and did not file suit until June despite having known of summer service issue in March).

### 3.  Amendment of the Complaint Would not Change the Result

As should be apparent from the foregoing analysis, amendment of Plaintiff's complaint would not alter the undersigned's conclusion that administrative exhaustion is required before Plaintiff can proceed in this Court.  An amendment would not change that the crux of Plaintiff's complaint "concerns the 'denial of a free appropriate public education.'"  Administrative exhaustion under the IDEA is therefore mandatory.  *Accord*, *Perez*, *supra* at *2.

### III.    Conclusion and Recommendation

For the reasons stated, **IT IS RECOMMENDED:**  that Plaintiff's request to amend his complaint (Doc. 30 at 1 and oral argument) be **DENIED**, that Defendants' motion to dismiss (Doc. 27) be **GRANTED,** and that this case be dismissed in its entirety for failure to administratively exhaust the claims presented.

---

[10]Counsel stated that this lack of faith was based upon Plaintiff's perception that the Defendants had failed to follow DOE guidance that supported the reevaluation of IEPs during remote learning, as well as the Defendants' decision to continue remote learning in the face of statements by the Ohio governor encouraging the resumption of in-person learning.

_Stephanie K. Bowman_
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

R.Z., by his/her parent B.Z.,                                      Case No. 1:21-cv-140

              Plaintiff,                                      McFarland, J.
                                                                  Bowman, M.J.
    v.

CINCINNATI PUBLIC SCHOOLS, et al.,

              Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

21